UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ZELDA LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:05-cv-0964-DFH-TAB |
| ) | |
| INDIANA WOMEN'S PRISON, ) | |
| ) | |
| Defendant. ) | |

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Zelda Lewis is an employee of the Indiana Department of Correction and has taught cosmetology at the Indiana Women's Prison since 1990. She has sued her employer for race discrimination and retaliation, asserting claims under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1] The defendant has moved for summary judgment. Lewis has conceded that she does not have sufficient evidence to support her claim of race discrimination. Defendant's motion is granted as to those claims. Lewis opposes summary judgment on her retaliation claim under Title VII and § 1981. As explained below, she has come forward with sufficient evidence to avoid summary judgment on the retaliation claim.

---

[1] Plaintiff has named the "Indiana Women's Prison" as defendant. This court often rejects *pro se* plaintiffs' efforts to name a particular jail or prison as a defendant in civil rights cases. The correct defendant here is actually the Indiana Department of Correction, which employs Lewis.

*Summary Judgment Standard*

Summary judgment must be granted if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual issue is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is material if resolving the factual issue might change the suit's outcome under the governing law. *Id.* The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party. *Id.* at 249.

When ruling on the motion, the court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *Id.* at 255. The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

*Facts for Summary Judgment*

As is usually the case in summary judgment practice, the following account of facts is not necessarily correct in an objective sense, but it reflects the undisputed facts and disputed evidence in the light reasonably most favorable to the non-moving party, plaintiff Zelda Lewis. Lewis, a black woman, began working for the Indiana Department of Correction at the Indiana Women's Prison in 1990 as the head cosmetology instructor. She prepared inmates participating in the prison's vocational program to take the state cosmetology licensing examinations. As part of this preparation, the students completed 1500 hours of classroom instruction and lab experience, styling each inmate's hair once every three months. When they sat for the state licensing examinations, Lewis' students received top marks, among the highest in the state. Lewis Dep. 77.

Lewis felt that she was singled out for negative treatment that other teachers – white teachers – did not have to endure. Lewis also heard a supervisor say, as paraphrased by Lewis, "I just hate that black B." *Id.* at 58. On November 15, 2004, Lewis filed her first Equal Employment Opportunity Commission ("EEOC") charge based on race discrimination.

Lewis asserts that the prison staff then began retaliating against her for filing the charge. A Department of Correction policy prohibited individual teachers from supervising more than twenty inmates during one class session. On at least one day, the prison sent twenty-nine inmates to Lewis. *Id.* at 126. Dwight Ashley,

the prison's director of education, frequently listened to Lewis' class via a telephone speaker system. *Id.* at 79. He was critical of Lewis' teaching methods but would not provide suggestions when Lewis requested them. *Id.* at 79.

Lewis stopped receiving notices or information about teacher meetings within the prison or with other Department of Correction staff. *Id.* at 35-37. A supply staff member performed daily inspections of Lewis' beauty supply inventories, while other teachers also required to do inventories underwent inspections only once a week or even every six months. *Id.* at 45-47. Other teachers and staff began walking through Lewis' classroom at frequent intervals to keep watch, sometimes pressing their faces against the window in Lewis' door. *Id.* at 80, 83-86. Lewis wrote several grievances against her supervisors, but other administrators never reviewed these reports. *Id.* at 40-41, 95-96.

In May 2005, Lewis' appendicitis burst, requiring her to take a medical leave. Rather than imparting truthful information, an administrator told inmates that Lewis was absent because she had suffered a nervous breakdown. *Id.* at 68. When Lewis returned to the prison in September 2005, she found that the cosmetology program was being run by two inmates who were licensed cosmetologists and a staff secretary. For months after Lewis' return, the two inmates and the secretary continued essentially to run the program. Lewis was not permitted to do her own inventories or to make her own supply orders until

July 2006.  *Id.* at 141-42.  When she complained, management told Lewis that they would give her the classroom back "when they were ready."  *Id.* at 141.

In March 2006, Ashley informed Lewis that she needed to produce six graduates in the next twelve months in order for the prison to keep the cosmetology program.  Lewis Dep. Ex. 16.  Many of Lewis' students were part-time.  Lewis Dep. 238-39.  Other students were pulled from the classroom for disciplinary or health reasons, to participate in other prison programs, or to meet with their attorneys and other visitors.  *Id.* at 251-55, 257-59.  Sometimes, the vocational department was closed due to larger problems within the prison.  *Id.* at 240.  With these delays, students often took two to three years to complete the required 1500 hours.  *Id.* at 357-59.

Lewis continued to receive negative treatment she felt was retaliation for the legal actions she took against the prison's staff.  During her medical leave, Lewis' state teaching license lapsed.  When she returned and went through her license renewal file, Lewis discovered that her previous evaluations and renewal paperwork had been destroyed.  *Id.* at 69-70.  In May 2006, Ashley reprimanded Lewis for calling an inmate in to have her hair styled.  Lewis had not been informed that the inmate was not free to come.  *Id.* at 93-94.  Lewis testified that when she asked Ashley why she was being disciplined for this as well as other occasions, Ashley said:  "You know why.  You are suing the women's prison."  *Id.* at 78-79.  Defendant argues that Lewis' testimony about this incident shows that

the statement attributed to Ashley did not refer to any treatment that would amount to a materially adverse action. In deciding a motion for summary judgment, the court must give Lewis the benefit of the doubt on the scope of the statement. Moreover, if Ashley expressly confirmed a retaliatory motive for at least some of the employer's actions, as Lewis has testified, it would not be difficult to infer that the same motive extended to other actions as well.

On June 21, 2006, Lewis filed a second EEOC charge based on retaliation and continued to experience treatment she perceived as retaliatory harassment. The prison failed to supply her with enough beauty supplies to meet her program's needs. To compensate, the inmates brought their own shampoos and conditioners. *Id.* at 151. One afternoon in July 2006, Ashley told the education staff, except for Lewis, to go home early. Lewis was unaware of the early dismissal until the lights went out and she found herself alone and locked in the building with several inmates. *Id.* at 106-07.

To justify these actions, the prison noted that Lewis had violated the prison's inventory and supply storage procedures several times in the fall of 2004. A supervisor reprimanded Lewis for such violations orally and in writing. Lewis Dep. Ex. 10. The prison also explained that in September 2004, Lewis had screamed at her students and told them to "shut up." Lewis Dep. Ex. 33 at 7.

As noted, Lewis filed her first EEOC charge based on race discrimination on November 15, 2004. She brought this suit against the defendant on June 28, 2005. She filed her second EEOC charge based on retaliation on June 21, 2006. The EEOC issued Lewis a right to sue letter on August 17, 2006 under 29 C.F.R. § 1601.19. Lewis filed an amended complaint, incorporating the retaliation claim, on October 11, 2006. This court has jurisdiction under 28 U.S.C. § 1331.

*Discussion*

Under Title VII or § 1981, a plaintiff may try to prove retaliation either a direct or indirect method of proof. See *Pantoja v. American NTN Bearing Mfg. Corp.*, No. 06-1252, 2007 WL 2230095 *7, — F.3d —, — (7th Cir. Aug. 6, 2007) (same methods apply under both Title VII and § 1981); *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 398, 404 (7th Cir. 2007) (recognizing retaliation claims under § 1981 and applying Title VII standard); *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (Title VII retaliation). Under the direct approach, the plaintiff must present evidence of (1) a statutorily protected activity, (2) a materially adverse action taken by the employer, and (3) a causal connection between the two. See *Humphries*, 474 F.3d at 404.

Under the indirect approach, the plaintiff must also show protected activity and a materially adverse action. To show a causal connection, the plaintiff may show a prima facie case by showing that she was performing her job satisfactorily and that similarly situated employees who did not engage in protected activity

were not subjected to adverse action. *Pantoja*, 2007 WL 2230095, at *7; *Stone*, 281 F.3d at 644. That showing shifts the burden to the employer to articulate a legitimate, non-discriminatory reason for the materially adverse action. See *McDonnell Douglas*, 411 U.S. at 802. After such a rebuttal, the employee then has an opportunity to demonstrate that the employer's stated reason was actually a pretext for discrimination. *Id.* at 804-05. In opposing a summary judgment motion, of course, the employee need not prove her case by a preponderance of the evidence, but she must come forward with evidence that would allow a reasonable jury to find in her favor on any points challenged in the motion.

Lewis has come forward with sufficient evidence to defeat summary judgment under the direct method of proof. The first and third elements of the direct approach are readily satisfied here. Filing an earlier employment discrimination claim based on race is a statutorily protected activity. See 42 U.S.C. §§ 2000e-2(a), -3(a); *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792-93 (7th Cir. 2007) (finding that filing earlier discrimination claim constituted a statutorily protected activity). Lewis has testified that the prison's director of education, Dwight Ashley, admitted that at least some of the asserted materially adverse actions occurred because Lewis sued the women's prison. His statement, as set forth in Lewis' testimony, is sufficient evidence of a causal connection to avoid summary judgment. See *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 576-77 (7th Cir. 2001) (reversing and remanding summary judgment in employment

discrimination case where plaintiff offered evidence of direct admission of discriminatory intent).

On the second element, a materially adverse action, Lewis has come forward with evidence that: (1) she was effectively demoted; (2) she was subjected to unequal disciplinary scrutiny; (3) she was denied effective access to the grievance process; and (4) the prison created a hostile work environment. The Supreme Court has interpreted Title VII's anti-retaliation provision broadly and rejected the argument that a materially adverse action for a retaliation claim must rise to the level of an "ultimate employment decision" such as hiring, firing, reassigning to a position with very different responsibilities, or significantly changing the claimant's benefits. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. —, —, 126 S. Ct. 2405, 2415-16 (2006) (noting that excluding an employee from a weekly training lunch where important professional information is shared might well constitute a materially adverse action). For purposes of a retaliation claim, a "materially adverse" action is one that would dissuade a reasonable employee from filing a discrimination claim. *Id.* at 2415.

In *Washington v. Illinois Dept. of Revenue*, 420 F.3d 658, 659 (7th Cir. 2005), the employee argued that a shift change from her original 7 a.m. to 3 p.m. schedule to a new 9 a.m. to 5 p.m. schedule was a materially adverse action because of her particular situation. The later schedule interfered with the employee's ability to care for her son with special needs. *Id.*, cited with approval

in White, 126 S. Ct. at 2415. The Seventh Circuit reversed summary judgment in the employer's favor. The employee's claim was not necessarily a winner, but a jury could find that the employer "set out to exploit a known vulnerability and did so in a way that caused a significant (and hence actionable) loss." 420 F.3d at 663.

Similarly here, Lewis' assertions of materially adverse actions are not certain to prevail. But she has come forward with evidence that the prison staff limited her responsibilities, wrongly disciplined her, terminated her ability to submit grievances, and created a hostile work environment, and that the staff did so for the express purpose of retaliating against her for filing a discrimination claim. A reasonable jury could find that these actions occurred and that they were materially adverse in that they would be sufficient to discourage a reasonable employee from filing a charge of discrimination.

*Conclusion*

For the foregoing reasons, defendant's motion for summary judgment is granted as to plaintiff's race discrimination claim but denied as to her retaliation claim.

So ordered.

Date: August 24, 2007

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Steven T. Fulk
FULK & ASSOCIATES
stfulk@fulk-assoc.com

Cynthia B. De Nardi
INDIANA STATE ATTORNEY GENERAL
cynthia.denardi@atg.in.gov

Juliana B. Pierce
INDIANA STATE ATTORNEY GENERAL
Julie.Pierce@atg.in.gov